IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**SANTOS ESCALERA-SALGADO**, *et al.*,

    Plaintiffs,

    v.

**UNITED STATES OF AMERICA**,

    Defendant.

Civil No. 14-1352 (BJM)

**OPINION AND ORDER**

Santos Escalera-Salgado ("Escalera") and Olga Pagan-Torres ("Pagan"), individually and on behalf of their minor children, J.E.P. and D.E.P., brought this action against the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680, alleging that federal agents shot Escalera without provocation while executing a search warrant at his apartment residence. Docket No. 1 ("Compl."). The government moved for summary judgment, Docket Nos. 26, 32, and Escalera opposed. Docket No. 41. The case is before me on consent of the parties. Docket No. 17.

For the reasons set forth below, the motion for summary judgment is **DENIED**.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record materials "which it believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, it must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

## BACKGROUND

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56[1] submissions.[2]

In October 2011, law enforcement agents secured a warrant to search for guns and controlled substances at Escalera's apartment residence after various law enforcement

---

[1] Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are uncontested and material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. *Id.* 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). While the "district court may forgive a party's violation of a local rule," litigants ignore the Local Rule "at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007).

[2] The government's Statement of Uncontested Facts ("SUF"), Docket No. 28; Plaintiffs' Opposing Statement of Facts ("OSF"), Docket No. 40 at 1–5; Plaintiffs' Additional Statement of Facts ("ASF"), Docket No. 40 at 5–6; and the government's Response to the ASF ("RASF"), Docket No. 43.

agencies investigated drug trafficking by gang members at certain locations. SUF ¶¶ 1–6. The warrant was executed at around 5:35 a.m. on October 29, 2011, by four agents with ICE Homeland Security Investigations—Jose Fernandez ("Fernandez"), Josue Menendez ("Menendez"), Jose Calderon ("Calderon"), and Ariel Perez ("Perez")—and one Puerto Rico Police Officer, Helme Santiago ("Santiago"). Docket No. 28-4 at 2.

The parties tell diametrically opposed accounts of the events that occurred when the agents attempted to execute the search warrant.

*Government's Account*

When executing the warrant, according to Menendez, the agents announced the presence of police and proceeded to breach the apartment's entry door after receiving no response. Docket No. 28-4 at 13 ¶ 3. Once inside the apartment, Fernandez and Menendez, both of whom wore clothing identifying them as police officers, detected movement inside a bedroom. SUF ¶¶ 10, 11, 22. Menendez re-announced the presence of police officers, and ordered a person inside the bedroom, later identified as Escalera, to come out and show his hands. SUF ¶¶ 12, 13. Fernandez and Menendez then saw Escalera coming out from behind a concrete wall inside the bedroom, and they reiterated that he should show his hands. SUF ¶¶ 15, 16.

Escalera did not comply with those orders; instead, he reached toward his waist or groin area as he moved for cover behind the concrete wall. SUF ¶ 17. This made Menendez and Fernandez believe that Escalera was reaching for a gun. SUF ¶ 19. Fearing they were in imminent danger of losing their lives, Menendez fired one shot and Fernandez discharged another. SUF ¶¶ 19–21, 33. One of the two bullets lodged in Escalera's elbow. SUF ¶¶ 22–24. After he was shot, Escalera moved away from the wall. SUF ¶ 24. The agents continued instructing Escalera to show his hands until they were able to apprehend him. SUF ¶ 23. Pagan was also inside the bedroom, and she, too, was arrested. SUF ¶ 25. The warrant was executed, and the search for a gun came up empty. SUF ¶ 31.

*Plaintiffs' Account*

Escalera testified that on October 29, 2011, he and Pagan were sleeping in their bedroom with the air conditioner enabled and their bedroom door closed.[3] OSF ¶ 9. It was dark inside the apartment at the time. OSF ¶ 11. While no one knocked on the door or announced the presence of police, Escalera began hearing noise, voices, and yelling. OSF ¶¶ 8, 9. After the ruckus awoke Escalera and Pagan, they sat on their bed and directed their attention to the voices and light beams coming from the living-room area of their apartment. OSF ¶¶ 9–11. By this time, someone had opened the couple's bedroom door. Docket No. 40 at 10–11. The agents did not call for Escalera after entering the apartment, and Escalera could not discern what the agents were saying because they were not speaking Spanish. OSF ¶¶ 8, 12, 13.

The agents entered the couple's bedroom and ordered Escalera to get on the floor. OSF ¶ 16. Though he did not put his hands in his pockets or try to grab anything, Escalera heard two shots while he was still sitting on the bed. OSF ¶¶ 15–20. Escalera crawled around the floor and noticed that he had been shot in the elbow. OSF ¶¶ 15–20. Escalera then attempted to turn on the light inside the bedroom, OSF ¶¶ 15–20, though he acknowledged that he did not tell the agents that he planned to do so. Docket No. 28-5 at 4. Afterward, Escalera and Pagan were arrested and the warrant was executed. OSF ¶¶ 25–27. No firearm was found, and Escalera highlights that none of the agents actually testified to seeing him draw a weapon or anything that resembled a weapon. ASF ¶ 1.

**DISCUSSION**

The government contends that the agents used a reasonable amount of force under the circumstances, and that qualified immunity shields the government from liability. Escalera maintains that the agents' version of the events is at odds with his own testimony, and that this presents a genuine dispute of material fact that precludes summary judgment.

---

[3] In contrast to Escalera's testimony, Menendez and Fernandez—who were the first to enter the bedroom—testified that the bedroom door was *open*. RASF ¶ 2; Docket No. 40 at 26, 34.

**I.    FTCA**

The Act "was designed primarily to remove the sovereign immunity of the United States from suits in tort." *Levin v. United States*, 568 U.S. ——, ——, 133 S. Ct. 1224, 1228, (2013) (internal quotation marks omitted). It makes the federal government "liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *United States v. Olson*, 546 U.S. 43, 46–47 (2005) ("the words 'like circumstances' do not restrict a court's inquiry to the *same circumstances*, but require it to look further afield" by considering analogies in which a private person could be found liable) (emphasis in original) (internal quotation marks omitted).

The "FTCA provides an exception to the United States' liability for certain torts, including assault, battery, and false arrest." *Tekle v. United States*, 511 F.3d 839, 851 (9th Cir. 2007). But when "such a tort is committed by a federal law enforcement officer . . . liability is restored." *Id.*; *see also Millbrook v. United States*, —— U.S. —— 133 S. Ct. 1441, 1444 (2013) (FTCA waives sovereign immunity as to "acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest"). The relevant portion of the Act, which is known as the "law enforcement proviso," provides:

> The provisions of this chapter and section 1346(b) of this title shall not apply to—
>
> . . . . .
>
> (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising . . . out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution.

*Millbrook*, 133 S. Ct. at 1444 (quoting 28 U.S.C. § 2680(h)).

"On its face, the law enforcement proviso applies where a claim both arises out of one of the proviso's six intentional torts, and is related to the 'acts or omissions' of an 'investigative or law enforcement officer.'" *Millbrook*, 133 S. Ct. at 1444–45. To determine whether the plaintiff can establish the government's liability under the FTCA, courts look to the "law of the place where the act or omission occurred." *See Calderon-Ortega v. United States*, 753 F.3d 250, 252 (1st Cir. 2014) (quoting 28 U.S.C. § 1346(b)(1)). Escalera was shot at his residence in Puerto Rico, and so Puerto Rico law supplies the "substantive rules of decision" that govern his claim. *See Calderon-Ortega*, 753 F.3d at 252.

To determine the claim upon which the government's FTCA liability is premised, it is necessary to consider the allegations in the complaint. The complaint cites the Puerto Rico Civil Code, and asserts that the agents' actions constituted "faulty, wrongful and/or negligent acts or omissions for which the United States is liable." Compl. ¶¶ 4.2–4.3. Article 1802 of the Puerto Rico Civil Code provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141. The concept of "fault" in the statute "is as broad as the behavior of human beings," and "includes any fault that causes harm or injury." *Bonilla v. Chardon*, 18 P.R. Offic. Trans. 696, 709 (P.R. 1987). So in addition to claims sounding in negligence, "[c]laims of assault and battery" are actionable under Article 1802. *Harrington v. United States*, 748 F. Supp. 919, 932 (D.P.R. 1990) (citing P.R. Laws Ann. tit. 31, § 5141; *Zalduondo v. Sánchez*, 15 D.P.R. 231 (1909)); *see also Rojas v. Maldonado*, 68 D.P.R. 818 (1948).

While the complaint did not specify whether Escalera sought to establish a claim for negligence or battery, he now characterizes the agents' alleged conduct in terms of negligence. Docket No. 41 at 6–8 ¶¶ 2.18, 2.20. When "determining whether the plaintiff's claim falls within the law enforcement exception to the intentional tort exception," the court "must look to the substance of the claim and not limit" its "review to how the plaintiff pleaded the cause of action." *Milligan v. United States*, 670 F.3d 686, 695 (6th Cir. 2012);

*Limone v. United States*, 579 F.3d 79, 92 (1st Cir. 2009) (in an FTCA case, "an inquiring court *must* look past the nomenclature employed by the plaintiff and focus on the actual nature of the plaintiff's grievance") (emphasis added); *Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir. 1976) ("a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the substance of the claim which he asserts"); *United States v. Faneca*, 332 F.2d 872, 875 (5th Cir. 1964) (same). The substance of Escalera's claim, as stated in the complaint, sounds in the intentional tort of battery—not negligence—as the nub of the claim is that federal agents intentionally shot Escalera without provocation. Compl. ¶¶ 2.1–2.9.

Three reasons militate in favor of the proposition that the substantive law of Puerto Rico for battery, and not negligence, provides the relevant rules of decision that govern the FTCA claim in this case. *See Calderon-Ortega*, 753 F.3d at 252; *Limone*, 579 F.3d at 92. First, as the Supreme Court has explained, the law enforcement "proviso specifies that the conduct *must* arise from *one of the six* enumerated intentional torts." *Millbrook*, 133 S. Ct. at 1445 (emphases added). A claim sounding in negligence is distinct from a claim asserting an intentional tort, and the law enforcement proviso does not expressly incorporate negligence suits against federal law enforcement officers. *See* 28 U.S.C. § 2680(h); *Milligan*, 670 F.3d at 696 ("the law enforcement exception § 2680(h) provides no basis for the [plaintiff's] negligence suit against federal officers"). Second, merely "speaking in terms of the negligence of government employees as such is insufficient to satisfy the FTCA's 'private person' requirement." *Bolduc v. United States*, 402 F.3d 50, 57 (1st Cir. 2005) (merely speaking in terms of FBI agent's negligence was insufficient to maintain an FTCA action). Third, a plaintiff bringing an FTCA action against the government may not recast "law enforcement's negligent acts as an intentional tort," and the "same logic applies in the opposite direction." *See Milligan*, 670 F.3d at 695–96; *Satterfield v. United States*, 788 F.2d 395, 399 (6th Cir. 1986) ("No semantical recasting

of events [as negligence] can alter the fact that the battery was the immediate cause" of the injuries).

The Puerto Rico Supreme Court has previously relied on the common-law approach when analyzing claims sounding in battery. *See Montes v. Fondo del Seguro del Estado*, 87 D.P.R. 199 (1963); *Rojas v. Maldonado*, 68 D.P.R. 818, 827 (1948) (jurisprudence of the United States relied upon to resolve claim sounding in battery); Carlos J. Irizarry Yunqué, *Responsabilidad Civil Extracontractual*, § II.C.1 at 65–72 (3d ed. 1998). In cases "where the Puerto Rico court has not diverged from common law principles," the Restatement (Second) of Torts supplies the "appropriate framework for analysis" of a tort claim arising under Puerto Rico law. *See Rodriguez v. United States*, 54 F.3d 41, 45 (1st Cir. 1995); *see also Importers Ctr., Inc. v. Newell Cos., Inc.*, 758 F.2d 17, 20 (1st Cir. 1985) (Restatement (Second) of Contracts considered in the absence of controlling Puerto Rico law); *United States v. Marshall*, 391 F.2d 880, 883 (1st Cir. 1968) (where Puerto Rico Supreme Court demonstrated pattern of reliance on common-law authority, court followed approach by Restatement of Torts).

Under the Restatement (Second) of Torts, "an actor is subject to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." Restatement (Second) of Torts § 13 (1965). However, "liability is defeated by any privilege available to the defendant." *Id.* § 13 cmt. d. Save some exceptions, a person is generally "privileged to defend himself against another by force intended or likely to cause death or serious bodily harm, when he reasonably believes that (a) the other is about to inflict upon him an intentional contact or other bodily harm, and that (b) he is thereby put in peril of death or serious bodily harm or ravishment, which can safely be prevented only by the immediate use of such force." *Id.* § 65; *see also Reyes Salcedo v. Policia de P.R.*, 143 D.P.R. 85, 98–100 (P.R. 1997).

Here, there is sufficient evidence from which a reasonable jury could find that the federal agents *intended* to cause a harmful contact when they shot Escalera. *Id.* § 13. A reasonable jury could also find that harmful contact directly resulted, as one of the two bullets discharged by the agents lodged in Escalera's elbow and resulted in serious injuries. *Id.* § 13. Yet, a genuine dispute of material fact remains as to whether the agents were privileged in shooting Escalera on account of a reasonable belief that they needed to act in self-defense. *Id.* § 65. According to the government's version of the events, the agents shot Escalera while attempting to execute the search warrant because he failed to open the entry door to his apartment residence and reached for his groin or waistband area as he moved for cover behind a concrete wall.

Escalera seeks to tell a different story: that the agents stormed into his apartment residence without announcing their presence and shot him without provocation as he sat still on his bed. Which of these two versions is grounded in fact presents a triable issue not susceptible to summary judgment adjudication. *See, e.g.*, *Tekle*, 511 F.3d at 855 (where federal agents "encountered a barefoot, unarmed eleven-year-old boy who was not resisting them," and the plaintiff "testified that the officers continued to keep their guns trained upon him throughout the incident and that one officer picked him up from behind by the chain of the handcuffs," there was a genuine dispute of material fact that precluded summary judgment on an FTCA claim asserting assault and battery).[4]

## II.   Qualified Immunity

The government invokes the doctrine of qualified immunity, asserting that Puerto Rico tort law cannot impose liability on the federal government where the law enforcement

---

[4] The complaint also asserts Article 1802 claims on behalf of Pagan and the couple's minor children. Compl. ¶ 4.5. "As the Puerto Rico Supreme Court has 'repeatedly recognized,' individuals who suffer distress because a relative or loved one is tortiously injured have a cause of action under Article 1802 against the tortfeasor." *Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36, 57 (1st Cir. 2009). Because Escalera's claim is not susceptible to summary judgment adjudication, the claims asserted by Pagan and the couple's minor children are also not dismissed. *See id.* at 57 & 57 n.17 (father who suffered emotional distress because of his son's false arrest asserted an actionable tort claim that depended on the success of his son's false imprisonment claim).

officers involved in causing the harm would normally be entitled to qualified immunity if the plaintiff had brought *Bivens* actions against those officers. Docket No. 32 at 3. Before delving into the merits of the government's position, an understanding of a *Bivens* action and the qualified immunity doctrine is helpful. "A *Bivens* action is a civil action brought against agents of the United States, deriving its name from *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 . . . (1971)." *Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 94 (1st Cir. 2013) (parallel citations omitted). "This implied cause of action is the federal analog to § 1983 suits against state officials." *Soto–Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011). Accordingly, "*Bivens* establishes, as a general proposition, 'that victims of a constitutional violation perpetrated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits.'" *Soto-Torres*, 654 F.3d at 157–58 (quoting *Ruiz Rivera v. Riley*, 209 F.3d 24, 26 (1st Cir. 2000)).

The qualified immunity doctrine "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When "a defendant invokes qualified immunity, the burden is on the plaintiff to show the inapplicability of the defense." *Rivera-Corraliza v. Morales*, 794 F.3d 208, 215 (1st Cir. 2015) (citing *Quintero de Quintero v. Aponte–Roque*, 974 F.2d 226, 228 (1st Cir. 1992)). To do so, the plaintiff must show that (1) "defendants violated a statutory or constitutional right," and that (2) "the right was clearly established at the time." *Morales*, 794 F.3d at 214. "The second prong, in turn, has two parts: (a) whether the legal contours of the right in question were sufficiently clear that a reasonable official would have understood that what he was doing violated that right, and (b) whether the particular factual violation in question would have been clear to a reasonable official." *Diaz-Bigio v. Santini*, 652 F.3d 45, 50 (1st Cir. 2011).

In *Solis-Alarcon v. United States*, 662 F.3d 577 (1st Cir. 2011), the First Circuit noted that "in at least two decisions" it had "assumed that Puerto Rico tort law would not impose personal liability for mistaken arrests where the officers would be protected in *Bivens* claims by qualified immunity." *Id.* at 583 (citing *Rodriguez*, 54 F.3d at 45–47 ("privilege attaching to the conduct of a government employee acting within the scope of his employment . . . has been recognized as a defense available to the United States" in an FTCA action); *Abreu-Guzman v. Ford*, 241 F.3d 69, 75–76 (1st Cir. 2001)). *Solis-Alarcon* also noted that "[o]ne of the few [Puerto Rico] cases dealing with civil liability of officers . . . spoke of the importance of the state's law enforcement function and the need" to compensate persons injured by officers carrying out those functions, and that this "is the view that animates federal qualified immunity doctrine." *Solis-Alarcon*, 662 F.3d at 583 (citing *Valle Izquierdo v. Commonwealth*, 2002 TSPR 64, 157 D.P.R. 1, 2002 WL 1067234 (2002) (official translation)).

As in *Rodriguez* and *Abreu-Guzman*, the court assumes that "Puerto Rico tort law would not impose personal liability" for an intentional tort (such as false imprisonment or battery) "where the officers would be protected in *Bivens* claims by qualified immunity." *See Solis-Alarcon*, 662 F.3d at 583–84; *Rodriguez*, 54 F.3d at 45–47; *Abreu-Guzman*, 241 F.3d at 75–76. The court also assumes that the federal government would be able to benefit from such a defense in an FTCA action. *See Solis-Alarcon*, 662 F.3d at 583–84; *Rodriguez*, 54 F.3d at 45–47. But even after assuming so, the government is not entitled to qualified immunity at this particular juncture because a genuine dispute of material fact precludes summary judgment on that issue. *See Morelli v. Webster*, 552 F.3d 12, 19 (1st Cir. 2009) (citing *Wilson v. City of Bos.*, 421 F.3d 45, 53 n.10 (1st Cir. 2005) (genuine disputes anent material facts must be resolved at trial even though qualified immunity is a question of law for the judge); *Kelley v. LaForce*, 288 F.3d 1, 7 (1st Cir. 2002) (disputes as to material facts sometimes will preclude summary judgment based on qualified immunity)).

In *Morelli*, the First Circuit instructed that when qualified immunity is invoked at the summary-judgment stage, the court should first identify "the version of events that best comports with the summary judgment standard" (i.e., reading the record evidence in the light most flattering to the non-moving party) and then ask "whether, given that set of facts, a reasonable officer should have known that his actions were unlawful." 552 F.3d at 19; *see also Solis-Alarcon*, 662 F.3d at 581 ("where qualified immunity is asserted, the district judge may apply it on summary judgment so long as any disputed facts are assumed *arguendo* in favor of the non-moving party.").

Applying *Morelli*'s framework to the circumstances here reveals that the government is not entitled to summary judgment. 552 F.3d at 19. Escalera asserts that federal agents shot him without provocation while executing a search warrant. He testified that the agents entered into his bedroom and shot him even though he sat still on in his bed and did not reach for his pockets or attempt to grab anything. Assuming *arguendo* that a reasonable jury credited Escalera's account of the events, the government would not be entitled to qualified immunity—for there "is no question that the shooting of an 'unarmed and harmless' civilian by police officers 'without provocation or reason,' if proved, constitutes a constitutional violation." *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 7 (1st Cir. 2007); *see also Tekle*, 511 F.3d at 852 (federal agents are not permitted "to commit torts in the process of executing warrants," and the FTCA's "law enforcement proviso was intended to provide remedies for victims of [such] law enforcement *abuses*"). Thus, because a genuine dispute of material fact precludes the court from determining whether the agents were privileged in shooting Escalera, as well as whether the government is entitled to qualified immunity, summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of September 2016.

                                                *S/ Bruce J. McGiverin*
                                                BRUCE J. MCGIVERIN
                                                United States Magistrate Judge